UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAMAR SHAW,

Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

Defendants.

Case No. 18-cv-06243-PJH

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 13

Defendant the United States of America's motion to dismiss for lack of jurisdiction came on for hearing before this court on January 9, 2019. Plaintiff Damar Shaw appeared through his counsel, Nick Neidzwski. The United States of America appeared through its counsel, Eric Kaufman-Cohen. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES defendant's motion to dismiss, for the following reasons.

**BACKGROUND**

On October 12, 2018, Shaw filed this action against defendants the United States of America, Ocean Shipholdings, Inc., and Ocean Duchess, Inc. (the latter two together are the "Operators"). Compl., Dkt. 1. Plaintiff alleges that he was injured while aboard a ship called the SS ALGOL, which is owned by the United States by and through the Department of Transportation, Maritime Administration.[1] The vessel is operated on

_____

[1] The term the United States as used in this order refers to the United States and its agencies.

1  behalf of the United States by Ocean Duchess, and Ocean Shipholdings is the parent of

2  Ocean Duchess.  Shaw asserts 3 claims:  (1) Jones Act negligence; (2) unseaworthiness;

3  and (3) maintenance, cure, and wages under maritime law.  Compl.  Shaw seeks general

4  damages, as well as attorneys' fees and punitive damages.

5  The United States has moved to dismiss all claims against Ocean Duchess and

6  Ocean Shipholdings.  Dkt. 13.

7  On January 22, 2016, Ocean Duchess entered into a ship manager contract to

8  crew, maintain, and operate the SS ALGOL.  Dkt. 30, Ex. A (the "Agreement").

9  Defendant filed certain excerpts from the Agreement with its motion, and on reply it filed a

10  complete copy of the Agreement.

11  On May 27, 2018, plaintiff alleges that he was employed by Ocean Duchess

12  and/or Ocean Shipholdings and working aboard the SS ALGOL.  The vessel was docked

13  at Pier 80 in San Francisco next to another ship.  That day, the ALGOL was moved to

14  allow the other ship to depart the pier, and then the ALGOL was moved back to its

15  position on the pier.  During that operation, a mooring line between the pier and the ship

16  snapped and struck Shaw, causing various severe injuries.  Plaintiff contends that the

17  Operators knew that the mooring lines were worn and needed to be replaced.

18  Plaintiff was hospitalized and underwent multiple surgeries.  He has since received

19  extensive medical care.

20  Following the incident, plaintiff submitted a claim for personal injury and wages to

21  the United States.  The United States denied the claim, and plaintiff filed this action.

22  **DISCUSSION**

23  **A.    Legal Standard**

24  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the

25  subject-matter jurisdiction of the court.  See Savage v. Glendale Union High Sch., 343

26  F.3d 1036, 1039–40 (9th Cir. 2003).  Federal courts are courts of limited jurisdiction and

27  may only hear cases where they have jurisdiction over the "subject matter" of the dispute,

28  as determined by federal law and the Constitution.  See Kokkonen v. Guardian Life Ins.

1     Co. of Am., 511 U.S. 375, 377 (1994); Mims v. Arrow Financial Services, LLC, 565 U.S.

2     368, 376–77 (2012); see also Chen–Cheng Wang ex rel. United States v. FMC Corp.,

3     975 F.2d 1412, 1415 (9th Cir. 1992) ("Federal courts have no power to consider claims

4     for which they lack subject-matter jurisdiction."). If a federal district court does not

5     have subject-matter jurisdiction, it must dismiss the case. See Fed. R. Civ. P. 12(b)(1).

6         Although lack of subject-matter jurisdiction is an affirmative defense, the burden of

7     proof in a 12(b)(1) motion is on the party asserting jurisdiction, and the court will presume

8     a lack of jurisdiction until the pleader proves otherwise. Kokkonen, 511 U.S. at 377.

9         A jurisdictional challenge may be facial or factual. Safe Air for Everyone v. Meyer,

10     373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines

11     whether the allegations contained in the complaint are sufficient on their face to invoke

12     federal jurisdiction, accepting all material allegations in the complaint as true and

13     construing them in favor of the party asserting jurisdiction. Id.

14         Where the attack is factual, however, "the court need not presume the truthfulness

15     of the plaintiff's allegations." Safe Air for Everyone, 373 F.3d at 1039. In resolving a

16     factual dispute as to the existence of subject-matter jurisdiction, a court may review

17     extrinsic evidence beyond the complaint without converting a motion to dismiss into one

18     for summary judgment. See id.; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.

19     1988) (a court "may review any evidence, such as affidavits and testimony, to resolve

20     factual disputes concerning the existence of jurisdiction"). "Once the moving party has

21     converted the motion to dismiss into a factual motion by presenting affidavits or other

22     evidence properly brought before the court, the party opposing the motion must furnish

23     affidavits or other evidence necessary to satisfy its burden of establishing subject matter

24     jurisdiction." Safe Air for Everyone, 373 F.3d at 1039.

25         The court can resolve factual disputes to determine its jurisdiction, however

26     resolving "genuinely disputed facts is inappropriate when . . . . the question of jurisdiction

27     is dependent on the resolution of factual issues going to the merits." Id.; see also

28     Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

**B.    Analysis**

The Constitution provides that "[t]he judicial Power shall extend . . . to all Cases of admiralty and maritime Jurisdiction."  U.S. Const. art. III, § 2.  "The Constitution's grant of federal jurisdiction for admiralty, 'codified at 28 U.S.C. § 1333(1), allows the filing of claims related to maritime contracts and maritime torts.'"  Ali v. Rogers, 780 F.3d 1229, 1234–35 (9th Cir. 2015) (quoting In re Mission Bay Jet Sports, LLC, 570 F.3d 1124, 1126 (9th Cir. 2009)).  In order to determine whether the court has federal admiralty jurisdiction, the court assesses "whether a claim has sufficient 'maritime flavor[.]'"  Id. at 1235.

The Suits in Admiralty Act, 46 U.S.C. §§ 30901 et seq. ("SIAA"), together with the Clarification Act, 50 U.S.C. § 4701, waive sovereign immunity for the United States in cases where "a civil action in admiralty could be maintained" against a private person in the same situation.  46 U.S.C. § 30903(a).  If a vessel is owned by the United States, and someone is harmed by the vessel or one of its employees, then the person may bring any admiralty claim against the United States.  Id.; see Ali, 780 F.3d at 1233; Dearborn v. Mar Ship Operations, Inc., 113 F.3d 995, 996 (9th Cir. 1997).  "In plain terms, the SIAA applies when (1) a vessel is owned by the United States or operated on its behalf, and (2) there is a remedy cognizable in admiralty for the injury."  Ali, 780 F.3d at 1233.

Here, the United States does not dispute that the court has admiralty jurisdiction over plaintiff's claims against the United States or that it has waived sovereign immunity with respect to those claims.

"Any remedy available under the SIAA is exclusive of any other remedy 'arising out of the same subject matter' that the plaintiff might bring against the individual who actually caused the harm at issue."  Id. (quoting 46 U.S.C. § 30904).  "That is, 'where a remedy lies against the United States, a suit against an agent of the United States 'by reason of the same subject matter' is precluded.'"  Id. (quoting Dearborn, 113 F.3d at 997).  The prohibition of suits against private parties acting as agents of the United States limits the court's subject-matter jurisdiction with respect to those parties.  Ali, 780 F.3d at

1   1237 (plaintiff "was required to bring his claims against the United States, not against

2   Rogers [the United States' agent].  Since he did not, the district court rightly concluded

3   that it lacked subject matter jurisdiction over the claims."); Watts v. Pinckney, 752 F.2d

4   406, 409 (9th Cir. 1985) ("there was a total want of jurisdiction" over agent of the United

5   States); see also Sharian v. United States, Case No. 98-cv-4578, 1999 WL 1427723

6   (N.D. Cal. Oct. 5, 1999).  "[T]he remedy available against the United States need not be

7   the same as that available against a private party for this provision to apply."  Ali, 780

8   F.3d at 1234.

9          Here, the United States argues that the court lacks subject-matter jurisdiction over

10  plaintiff's claims against the Operators because the Operators were acting as agents of

11  the United States within the meaning of the SIAA when plaintiff was injured.  Dkt. 13 at 6–

12  8; see generally Dearborn, 113 F.3d at 995 ("We must determine on this appeal whether,

13  at the time plaintiff . . . was injured, defendant . . . was acting as an 'agent or employee of

14  the United States,' within the meaning of the Suits in Admiralty Act[.]").

15         To determine whether an agency relationship exists under the SIAA, courts in this

16  circuit "use the common law definition of agency as a starting point for our analysis and

17  will then consider the relevant case law as well as the specific provisions of the

18  agreement between" the United States and the ship operator.  Dearborn, 113 F.3d at

19  997.  "The Restatement of Agency defines an agency relationship as 'the fiduciary

20  relation which results from the manifestation of consent by one person to another that the

21  other shall act on his behalf and subject to his control, and consent by the other so to

22  act.'"  Id. (quoting Restatement (Second) of Agency § 1(1) (1958)).  "Two characteristics

23  appear most often to be dispositive" in cases concerning the SIAA:  "in order to find that a

24  charterer is an agent of the United States, 1) the United States must exercise significant

25  control over the charterer's activities—either day to day control or overall control and

26  direction of the mission, and 2) the charterer must be engaged in conducting the

27  business of the United States."  Id. at 997–98 & n.3 (noting such considerations may

28  make principles of agency "apply more broadly in this context than it does elsewhere").

1  Plaintiff's complaint alleges that the Operators were acting on their own behalf and

2  not as agents of the United States when performing the acts underlying plaintiff's claims.

3  Compl. ¶ 9.  Defendant has presented a contract between the United States and Ocean

4  Duchess, Inc. pursuant to which the company agreed to perform certain tasks on behalf

5  of—and sometimes as an agent of—the United States. [2]  See generally Agreement.  But

6  the contract does not undermine plaintiff's allegation that the Operators were acting

7  outside the scope of their agency relationship when plaintiff was injured.  Nor has

8  defendant presented any evidence that an agency relationship existed aside from the

9  language in the contract.  As such, the contract alone is insufficient to convert

10  defendant's motion into a factual motion with respect to whether the Operators were

11  acting as agents of the United States when conducting the activities that allegedly injured

12  Shaw.[3]

13  Because defendant does not challenge the complaint's allegations that give rise to

14  this court's subject-matter jurisdiction, the court construes plaintiff's motion as a facial

15  attack.  The court finds that the complaint sufficiently alleges that the Operators were

16  acting outside the scope of their agency relationship with the United States when plaintiff

17  was injured, and therefore plaintiff has sufficiently invoked federal jurisdiction.  See

18  Compl. ¶ 9.

19  / / /

20  / / /

21

22  [2] Defendant argues that the parties' contract has a provision stating that the Operators
are always agents of the United States for purposes of the SIAA, but that term is not

23  dispositive of the factual question of agency.  See, e.g., Dearborn, 113 F.3d at 997 ("We,
too, will use the common law definition of agency as a starting point for our analysis");

24  Patterson v. Domino's Pizza, LLC, 60 Cal. 4th 474, 501 (2014) ("the parties'
characterization of their relationship in the . . . contract is not dispositive").  Moreover, the

25  contract also has provisions providing that the Operators are not agents of the United
States under certain circumstances.  E.g., Agreement § G.8.1.1.1 ("nothing contained

26  herein shall be deemed to extend to the ship manager the status of 'agent of the United
States' under any laws relating to contracts"); cf. Agreement § G.8.1.1 (purporting to

27  create an agency relationship for all actions subject to the SIAA and certain other acts).
[3] An early summary judgment motion—or another challenge to this court's subject matter

28  jurisdiction—may be appropriate following discovery on the issue of agency.

6

**CONCLUSION**

For the foregoing reasons, the United States' motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated:  January 18, 2019

_____

PHYLLIS J. HAMILTON
United States District Judge